

July 14, 2025

<u>*Via ECF*</u>
**Honorable Frederick Block**
**United States District Judge**
**U.S. District Court for the Eastern District of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

        Re:        **Union Mutual Fire Insurance Company v.**
                     **Liakas Law, P.C. et al.**
                     <u>**Case No. 1:25-cv-01857-FB-JRC**</u>

Hon. Senior Judge Block:

      The undersigned represents Plaintiff in the instant matter. We write pursuant to Your Honor's Individual Practice Rules and in response to the Pre-Motion Letter filed by Counsel for Defendants Liakas Law, P.C. and Dean Liakas, (Doc. #: 54).

      We entertain no illusion that our writing will dissuade any party from engaging in what will likely be extensive Rule 12(b)(6) practice on an inherently complex action. However, certain inaccuracies conveyed in Defendants' July 11, 2025 letter (the "correspondence") mandate a response.

      First, while the link provided in the correspondence does not work - purportedly supporting Defendants' contention that the Willis Law Group has orchestrated a "coordinated public relations offensive" – upon locating the article, it describes allegations made in a separate lawsuit, and a single press conference held by "Tradesman, Ionian Re, their legal representative Willis Law, construction trade organizations, and NY Congressman David Weprin," only one of whom, Congressman Weprin, gave a statement for the article. Notably absent is any mention of Plaintiff herein, or any support for the unfounded allegation of attempts to "chill advocacy and deter attorneys and medical providers from providing essential services to vulnerable claimants."

      This claim of chilling the provision of "essential services" loses further credibility in light of a named Defendant surgeon recently having their authorization to treat injured workers denied after an independent investigation by the New York State Workers' Comp Board found he performed "highly invasive" surgeries without proper medical justification, opted for "predetermined" surgical procedures, and characterized his conduct as "a wanton disregard and deviation from the standard of care," as well as "amount[ed] to professional misconduct."

---

**PENNSYLVANIA | NEW YORK | NEW JERSEY | DELAWARE**
**WEST VIRGINIA | FLORIDA | TEXAS**

**The Willis Law Group, PLLC** | 1985 Forest Lane, Garland, Texas 75042
(214) 736.9433 – Main | (214) 736.9994 - Facsimile
TheWillisLawGroup.com | E-Service Address: service@thewillislawgroup.com

Should this action in fact result in a chilling effect on the conduct as described by the Workers' Comp Board above – the rushing of those vulnerable claimants into unjustified, invasive, and risky surgery by the very same professionals entrusted with their care – one would expect these particular Defendants to welcome such an outcome.

Second, the passing reference to Roosevelt Road Re, Ltd. et al. v. Subin et al., No. 24-cv-05033 (HG) having been dismissed – misleadingly referenced within a paragraph addressing the substance of the allegations – omits that such decision was without prejudice and with leave to amend, and was based exclusively on standing grounds as to those particular Plaintiffs as a reinsurer and managing agent.

Here, Plaintiff is the direct insurer. The only relevancy of that decision to Plaintiff is the Court's language that "To be sure, insurers may clear the proximate case hurdle when they are the targets of the fraud," (p. 11), and "[Roosevelt] is differently situated from the insurer in its best case, Allstate Insurance Co. v. Seigel, in which the court found causation adequately pled under RICO where the defendant created false claims for unnecessary or nonexistent medical procedures paid out by Allstate, either directly or in the form of inflated judgments and settlements," (p. 12).

The attempt to reframe the harm as "contingent upon harm suffered by non-party landlords and tenants" - without citation - fails considering the above, and in light of the legal framework in which the underlying claims proceed. New York law mandates that an insurer's duty to defend is triggered by the filing of a claim or suit. "If the allegations in the complaint fall within the scope of policy's coverage, even if the allegations are false or groundless, the insurer has a duty to defend its insured." NYCHA v. Commercial Union Ins. Co., 734 N.Y.S.2d 590, 592 (2001). From the very first dollar, the damage caused by the alleged fraud scheme was borne by Plaintiff, and the triggering event was the filing of the fraudulent suits – *i.e.*, *precisely* the conduct forming several predicate acts plead against these Defendants. Doc. 1, ¶¶ 197, 207, 260 (listing 7 underlying acts).

New York law, by statute, CPLR § 3101(f), also requires mandatory disclosure of the relevant insurance in every underlying case. Defendants knew precisely who was the intended victim on every single fraudulent case. To claim otherwise – while every settlement discussion, every demand package, every release was with an insurer – is simply an attempt to mislead. As is the attempt to conflate damages suffered by Plaintiff in defending against fraudulent claims, as Plaintiff is bound to do by law, with the shapeless and entirely voluntary expenditures incurred by activists unhappy with FDA policies, or with what the Court in a Third Circuit Appendix case found to be a *pro se* Plaintiff trying to bootstrap attorneys' fees incurred in the RICO action itself as its only damages. Doc. 54, p. 2, *citing* Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 394 (2004); Knit With v. Knitting Fever, Inc., 2012 WL 2938992, at *8 (E.D. Pa. July 19, 2012), aff'd sub nom., 625 F. App'x 27 (3d Cir. 2015).

Third, the allegation that the elements of RICO are pled in conclusory fashion is, itself, stated in conclusory fashion. With 22 pages detailing the general mechanics of the Fraud Scheme and enterprise, 18 pages detailing each Defendants' specific role and conduct in the enterprise, another 18 pages providing granular details on 8 exemplar cases demonstrating a pattern of standard operating procedure and the enterprise in action, with voluminous predicate acts pled therein, the only way to respond to this argument is to simply state that it is not meritorious. As

recently reiterated in this Court's well-reasoned decision in Geico v. Star Medical, 1:24-cv-08049-FB-MMH, Doc. #: 50 (May 23, 2025), Rule 9(b) "only requires that the Complaint, taken as true, sufficiently explains in detail the contours of the fraudulent scheme it [plausibly] alleges." Plaintiff's pleading readily meets that bar.

Fourth, and once again omitting material considerations from the cases cited, Defendants contend, and even emphasize, that "*As a matter of law*, 'litigation activit[ies],' such as false litigation filings, standing alone, 'cannot act as . . . predicate offense[s] for a civil-RICO Claim,'" citing to Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018). Defendants omit that the Kim Court went on to ultimately conclude: "We decline to reach the issue of whether all RICO actions based on litigation activity are categorically meritless. We conclude only that where, as here, a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *I.e.*, squarely *not* the circumstances presented herein, and with the Kim Court directly admonishing that its limited holding should not be cited for the very proposition Defendants now argue. *As a matter of law,* Kim proactively *distinguished itself* from the facts at bar.

Indeed, State Farm v. Tri-Borough, 120 F.4th 59, 98 (2d Cir. 2024) directly rejects Defendants' argument, finding analogous facts to the instant matter not just sufficient for standing but to further justify exercising the exceedingly limited power to stay the underlying State Court proceedings : "because the state-court proceedings often concern individual claims, the piecemeal nature of those proceedings obscures the overall complex scheme, which becomes apparent only when one zooms out to view the alleged predetermined treatment protocols and 'pay-to-play' arrangements relevant to several claims."

Fifth, Defendants simultaneously contend that "to the extent the personal injury lawsuits remain pending, those cases are not ripe for adjudication," as well as that "any claims which were settled and released are also subject to dismissal." *I.e.*: heads I win, tails you lose. The first proposition is belied by numerous insurer RICO actions which not only permitted RICO claims to go forward related to active underlying State Court claims, but have further stayed the underlying proceedings, which was confirmed appropriate by the Court in State Farm, *supra*. As to the second proposition, if Defendants are in possession of a single relevant release – or any document - signed by Plaintiff which even arguably encompasses and precludes RICO liability for alleged criminal conduct on the part of Liakas Firm and Dean Liakas, they are encouraged to produce it.

We thank Your Honor for your time and consideration in reviewing this submission.

Respectfully Submitted,

*Daniel A. Johnston*
Daniel A. Johnston, Esq.

Cc: All Represented Parties *via* ECF
Anders Cohen, D.O.; Gotham Neurosurgery, P.L.L.C.; Guatam Khakhar, M.D.; Jean Paul Errol Toussaint, M.D.; Physical Medicine & Rehabilitation, P.C.
*Via E-mail to Counsel: NCERULLO@rmfpc.com*
Norman Cerullo, Esq., Ruskin Moscou Falkischek, P.c.